UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

—————————————

In re:

SHAWN C. ALLEN,                                    Case No. DG 12-05782
                                                   Hon. Scott W. Dales
                     Debtor.                       Chapter 7
_____/

MARCIA R. MEOLI, Chapter 7 Trustee,

                     Plaintiff,                    Adversary Proceeding
                                                   No. 13-80147
v.

TAMARA L. COOPER,

                     Defendant.
_____/


ORDER DENYING MOTION FOR SUMMARY JUDGMENT

        PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge


I.  INTRODUCTION

        Plaintiff Marcia R. Meoli (the "Plaintiff"), as chapter 7 trustee of the estate of Shawn

Allen (the "Debtor"), sues the Debtor's former wife, Tamara Cooper (the "Defendant") to avoid

and recover specified transfers the Debtor made to the Defendant pursuant to a judgment of

divorce ("JOD").  With respect to most transfers, the Plaintiff seeks avoidance under state and

federal fraudulent conveyance laws; with respect to others, she seeks avoidance under § 547(b).

        After the close of discovery, the Plaintiff timely filed a Motion and Brief for Summary

Judgment (the "Motion," DN 10).  The Defendant opposed the Motion, and the court heard oral

argument in Grand Rapids, Michigan, on April 2, 2014, before taking the matter under advisement.  For the following reasons, the court will deny the Motion.

## II.  JURISDICTION

The court has jurisdiction under 28 U.S.C. § 1334 and also appears to have authority to resolve the dispute as a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H) (fraudulent transfer recovery).

However, in light of the Supreme Court's opinion in *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011), the Defendant has challenged the court's authority to enter final judgment. Today's decision to deny the Motion is interlocutory, not final, and therefore does not implicate the concerns underlying *Stern*.  In any event, at trial the court will determine whether it has authority to enter judgment, or simply propose findings of fact and law.

## III.  SUMMARY JUDGMENT STANDARDS

A court should enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Either party may support its factual position by "citing to particular parts of materials in the record," such as depositions, affidavits, stipulations, admissions, or other such materials.  Fed. R. Civ. P. 56(c)(1).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party, here, the Defendant.  *See Hatchett v. United States*, 330 F.3d 875, 880 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.574, 587 (1986)).  A genuine issue for trial exists, and summary judgment is not appropriate, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Hatchett*, 330 F.3d at 880 (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)). If the moving party has met its summary judgment burden "by 'showing' ... that there is an absence of evidence to support the nonmoving party's case," and that the moving party is entitled to judgment under the facts, the nonmoving party can avoid summary judgment only by presenting specific evidence that raises a genuine issue for trial or by objecting to a fact that is not supported by admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c)(2). In opposing a properly supported motion, a party cannot "rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing M*atsushita Elec. Indus. Co.*, 475 U.S. at 586). Successful opposition requires more than a "scintilla" of evidence, *Anderson*, 477 U.S. at 252, or simply "some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. At trial, the Plaintiff will have the burden of proof by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279 (1991). The court has taken the burden of proof into account while considering the Motion.

## IV.  BACKGROUND

The Plaintiff seeks to avoid specified transfers of real and personal property from the Debtor to the Defendant pursuant to the JOD. In addition, the Plaintiff seeks to avoid the Debtor's promise to pay his ex-wife $40,000.00, memorialized on page 4 of the JOD under the heading "Equity Reimbursement." *See* Motion at Exh. 1. Although the complaint seeks to avoid as preferential three cash transfers totaling $6,000.00 (three $2,000.00 installments made on account of the Equity Reimbursement obligation), at oral argument the Plaintiff conceded that the transfers occurred outside the applicable preference period. (Tr. 9:18-10:4, April 2, 2014). Accordingly, if the Plaintiff is entitled to avoid any transfers, she must bring them within the scope of § 548 or Michigan's version of the Uniform Fraudulent Transfer Act, M.C.L. § 566.31

*et seq.* Moreover, again as narrowed during oral argument, she is not asserting that the Debtor made the transfers with actual intent to defraud; rather, she challenges the transfers as constructively fraudulent under § 548(a)(1)(B)(ii) or M.C.L. § 566.35(1).

The following facts -- mostly taken from the JOD -- are material, not genuinely disputed, and therefore established for purposes of this proceeding. Fed. R. Civ. P. 56(g). Indeed, under the full faith and credit statute, the court must give the JOD the same preclusive effect that it would receive in Michigan courts. 28 U.S.C. § 1738 (full faith and credit); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir.1999). Because the Plaintiff is effectively standing in the shoes of the creditors, she is not bound by the JOD in the same way the Debtor would be, *Fordu,* 201 F.2d at 704, but the state court's JOD is nevertheless "prima facie evidence of the jurisdiction of said court over the parties to such proceedings and of all facts recited therein . . ." M.C.L. § 600.2106.

To conclude the divorce proceeding that the Defendant initiated against the Debtor, the parties negotiated the division of their property (marital and separate), and embodied that agreement in a consent judgment which, when the state court judge endorsed it, ultimately became the JOD. Pursuant to the JOD, the parties agreed and the family court ordered the following transfers, each of which took place:

<u>From the Debtor to the Defendant</u>

| ITEM | DEFENDANT RECEIVED |
|---|---|
| Blue Lake Real Estate | $30,000.00 |
| 2001 5th Wheel | $2,000.00 |
| 1997 Ford 250 | $1,500.00 |
| 1999 Ford Ranger | $1,500.00 |
| Payments on JOD | $6,000.00 |
| 2009 Kia | 0.00 |
| Wilson Beach Rd. Property | 0.00 |
| **TOTAL** | $41,000.00 |

From the Defendant to the Debtor

| ITEM | DEBTOR RECEIVED |
|---|---|
| 2002 Ford F250 | $10,000.00 |
| 1999 Ford Taurus | $1,500.00 |
| **TOTAL** | $11,500.00 |

*See* Motion at 9. The values of each item of property set forth next to the property item above were established during discovery, principally from the Defendant's deposition testimony, and are not in dispute. At the time he effected the transfers and allegedly undertook the obligation described under the heading "Equity Reimbursement," the Debtor was insolvent. *See* Answer at ¶ 9.

In addition, to these transfers, the Debtor agreed to pay the Defendant $40,000.00 over time, which the JOD recites is "reimbursement of the equity from her premarital home." *See* JOD at p. 4.[1] This statement from within the JOD is prima facie evidence of the fact that the Debtor owed the Defendant a debt for the value of the Wilson Beach Road Property that he used to fund his failed business. M.C.L. § 600.2106. Drawing inferences in the Defendant's favor, therefore, there is evidence in the record from which the court might infer that the Debtor made the challenged transfers in satisfaction of the Defendant's claim (equitable or otherwise) against him. The court also infers that the $40,000.00 obligation that the Plaintiff seeks to avoid did not arise upon entry of the JOD, but that the JOD simply memorialized an obligation earlier incurred as the Debtor was borrowing on the line of credit that the Wilson Beach Road Property secured. Viewed in this light, the Debtor may have received reasonably equivalent value in exchange for the transfers by satisfying an antecedent debt in excess of the property value. *See* 11 U.S.C. § 548(d)(2)(A); M.C.L. § 566.33(1). In other words, the court infers that the Debtor made the

---

[1] The court will refer to the Defendant's premarital home as the "Wilson Beach Road Property."

transfers and included the $40,000.00 obligation within the JOD to pay the Defendant back -- or to reimburse her as the JOD says -- for exhausting the value of the Wilson Beach Road Property she brought into the marriage. In this way, the JOD supports the argument made in her written response to the Motion and again at oral argument. Because (as a matter of law) a debtor receives value when he transfers property to satisfy an antecedent debt, it is not a fraud on one's creditors to pay them, so the court must deny the Motion. *Meoli v. Huntington National Bank (In re Teleservices Group, Inc.),* 469 B.R. 713, 757 (Bankr. W.D. Mich. 2012) ("payment on account of an antecedent debt will almost always establish equivalent value needed to negate otherwise constructively fraudulent transfers by an insolvent debtor"); *Unsecured Creditors of Checker Motors Corp. v. Checker Acquisition Corp. (In re Checker Motors Corp.),* 495 B.R. 355, 362 (Bankr. W.D. Mich. 2013) ("satisfaction of an antecedent debt is sufficient [value] when constructive fraud is alleged").

The court is denying the Motion fully aware that the marital context in which the Debtor transferred the property does not insulate the transfers from avoidance. *See Estes v. Titus*, 751 N.W.2d 493, 499 (Mich. 2008); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693 (6th Cir.1999) (transfer of marital property pursuant to a prepetition separation agreement and divorce decree was a "transfer of an interest of the debtor in property" that was subject to avoidance by the trustee in the debtor-husband's subsequent chapter 7 case); *Suhar v. Bruno (In re Neal)*, 541 Fed. Appx. 609, 611 (6th Cir. 2013) (same). Nevertheless, the court cannot ignore the context of the transfers, including the goal of the family court in any divorce-related property settlement to effect an equitable distribution of property between spouses. *Berger v. Berger*, 747 N.W.2d 336, 349 (Mich. App. 2008) ("The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances."); *Moyer v. Slotman*

*(In re Slotman)*, slip op. Adv. No. No. 12–80232, 2013 WL 7823003 (Bankr. W.D. Mich. Dec. 5, 2013) (citing *Sparks v. Sparks,* 485 N.W.2d 893, 901, (Mich. 1992) (property divisions "need not be equal," but "must be equitable").  An equitable distribution takes into account, *inter alia*, the competing claims of the spouses for contributions to the marital estate.

Under both federal and state fraudulent transfer laws, the term "claim" is broadly defined,[2] and the term includes an equitable claim as a claim within the respective avoidance statutes.  The divorce court endeavors to split assets evenly, though not necessarily "into mathematically equal portions," *id.*, a notion reminiscent of "reasonable equivalence" from fraudulent transfer jurisprudence.[3]  Although certainly not dispositive,[4] the divorce court's approval of the separation agreement, in the absence of allegations of actual fraudulent intent, at least suggests reasonable equivalence.

Regardless, under state and federal fraudulent conveyance laws, "debt" means "liability on a claim," 11 U.S.C. § 101(12); M.C.L. § 566.31(d), and by defining "debt" by reference to "claim," they both employ a very broad definition, expansive enough to encompass the claim of one spouse against another after the initiation of divorce proceedings, including contingent claims for restoration of property rights "that shall have come to either party by reason of the marriage."  M.C.L. § 552.19.  On a motion for summary judgment, where the court draws inferences in favor of the non-moving party, the goal of equitable distribution underlying the

---

[2] *See* 11 U.S.C. § 101(5) (defining "claim"); M.C.L. § 566.31(c) (same).

[3] As the Sixth Circuit said in the unpublished *Neal* decision upon which the Plaintiff heavily relies, "a debtor is not required to collect a 'dollar-for-dollar equivalent,' to meet the requirement of receiving reasonably equivalent value."  *In re Neal*, 541 Fed. Appx. at 611 (citing *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325, 1336 (11th Cir.2007)).

[4] *In re Fordu*, 201 F.3d at 707-08 (noting different standards under Ohio law between equitable distribution and reasonably equivalent value).

JOD permits the court to infer that she gave value by compromising her marital claims in exchange for the value she received from the Debtor.

More specifically, the record permits an inference that the Debtor transferred property to the Defendant to satisfy her reimbursement claim related to the Wilson Beach Road Property, and that the property he transferred was less than her claim, prompting him to memorialize the balance of his obligation in the JOD under the provisions governing "Equity Reimbursement."

Because the court draws inferences in favor of the Defendant, it does not appear that the Plaintiff is entitled to judgment as a matter of law. The court, therefore, will deny the Motion and direct the parties to attend a pretrial conference to discuss further proceedings on the Plaintiff's complaint.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 10) is DENIED.

IT IS FURTHER ORDERED that the parties shall appear for the second pretrial conference on April 30, 2014 at 11:00 a.m., in Grand Rapids, Michigan.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Marcia R. Meoli, Chapter 7 Trustee and Robert A. Stariha, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated April 15, 2014**



Scott W. Dales
United States Bankruptcy Judge