UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

SHAWN C. ALLEN,                                    Case No. DG 12-05782
                                                   Hon. Scott W. Dales

              Debtor.                              Chapter 7
_____/

MARCIA R. MEOLI, Chapter 7 Trustee,

              Plaintiff,                            Adversary Proceeding
                                                   No. 13-80147
v.

TAMARA L. COOPER,

              Defendant.
_____/

OPINION AND ORDER AFTER TRIAL

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

I. INTRODUCTION

Marcia R. Meoli, as chapter 7 trustee for the bankruptcy estate of Shawn C. Allen (the "Debtor"), sued the Debtor's former wife, Tamara Cooper, to avoid and recover specific transfers the Debtor made to Ms. Cooper pursuant to a judgment of divorce (the "JOD"). Ms. Meoli (the "Trustee" or "Plaintiff") seeks avoidance of the transfers under state and federal fraudulent conveyance laws.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052. For the reasons stated below, the court finds that the Trustee may not avoid the transfers and obligations at issue in the complaint.

## II. JURISDICTION AND RELATED ISSUES

The court has jurisdiction of the Debtor's chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334(a), and the District Court's reference pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). As a matter of statute, the court has the authority to resolve the adversary proceeding as a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H) (fraudulent transfer recovery).

As noted in the Pretrial Order dated October 8, 2013, Ms. Cooper has challenged the court's constitutional authority to enter final judgment, evidently believing that the Trustee's claims for avoidance are so-called "*Stern* Claims," named for the United States Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). *See Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) (assuming, but not deciding, that fraudulent transfer claims are constitutionally "non-core," and that a bankruptcy judge may not enter final judgment). In the Pretrial Order, the court advised the parties that after trial it would decide whether it could enter final judgment in this matter, or instead simply propose a ruling for the District Court's consideration under Fed. R. Bankr. P. 9033, rather than 28 U.S.C. § 158.

Although the parties did not address the issue during the trial, the court nevertheless rejects Ms. Cooper's challenge, and finds that it may enter final judgment. Significantly, Ms. Cooper has filed a proof of claim (Claim No. 4) arising out of the very transactions under review, and the Trustee's complaint necessarily challenges that claim, first by seeking to avoid the obligations under the JOD, and second, by operation of 11 U.S.C. § 502(d). *See Onkyo Europe Electronics GMBH v. Global Technovations, Inc. (In re Global Technovations, Inc.)*, 694 F.3d 705 (6th Cir. 2012) (where fraudulent transfer litigation is estate's defense to proof of claim,

bankruptcy court has authority to enter final judgment). As in *Global Technovations*, it is "not possible ... to rule on [Ms. Cooper's] proof of claim without first resolving" the fraudulent transfer issue. *Global Technovations, Inc.*, 694 F.3d at 722 (*citing Stern*, 131 S. Ct. at 2616). Accordingly, the court will enter final judgment.

### III. ANALYSIS

#### A. <u>Findings of Fact</u>

At trial, the court heard testimony from Eric W. Ridlington, the Trustee's appraiser. Mr. Ridlington testified credibly regarding the value of the four parcels of unencumbered vacant land on Blue Lake Road in Twin Lake, Michigan (the "Blue Lake Property") —the Trustee's main target in this proceeding.

For the rest of her case, the Trustee relied principally on transcript excerpts from the Debtor's and Ms. Cooper's depositions, in addition to 16 exhibits admitted without objection.[1] Most of the facts in this case are not in dispute, making it unnecessary to evaluate the credibility of the two witnesses who were not physically present at trial.

Ms. Cooper and the Debtor were married on May 22, 2003. Before and throughout their marriage, the Debtor owned the Blue Lake Property free and clear of liens or encumbrances, and Ms. Cooper owned a home on Wilson Beach Road in Twin Lake, Michigan (the "Wilson Beach Property"), subject to a mortgage in the amount of $120,000.00. She resided at the Wilson Beach Property with her first husband before his death. During Ms. Cooper's marriage to the Debtor, the couple also owned personal property including three trucks, two cars and a "5th Wheel" recreational vehicle.

---

[1] This number does not include the updated version of Trustee's Exhibit 16 that the parties agreed the Trustee could file after trial concluded. She filed it on October 27, 2014 (DN 39).

Although the Debtor was a building contractor by trade, he was serving as an insurance adjuster during the early part of his marriage to Ms. Cooper, handling catastrophic claims for an insurance company. In that post, he came to believe that recent hurricanes had created a need for roof repair in the Sunshine State, and he saw an opportunity. He and Ms. Cooper discussed the possibility of his starting a roofing business in Florida. In the spring of 2006, the Debtor put his roofing business plan into action. (Def. Exh. B).

To fund this business, Ms. Cooper agreed to release some of the equity in her Wilson Beach Property by refinancing existing debt and allowing the Debtor to use the proceeds of the refinancing. To make this happen, Ms. Cooper quit-claimed her interest in the Wilson Beach Property to the Debtor and herself in June, 2006. They then refinanced the property, borrowing almost $200,000.00 from Household Finance Corporation (the "Household Finance Loan," Pl. Exh. 13). They used approximately $120,000.00 to pay off Ms. Cooper's original mortgage and the rest to retire some of the Debtor's credit card debt and start up or otherwise fund his new business.

Between the two of them, the Debtor and Ms. Cooper agreed that the Debtor would make the monthly mortgage payments on the Household Finance Loan until the payments equaled the amount of the original mortgage -- $120,000.00. This way, the Debtor would repay the amount of the loan used for his credit cards and business, and restore to Ms. Cooper the equity in the home.  On August 2, 2007, the couple again refinanced the Wilson Beach Property mortgage, this time with Quicken Loans ($188,000.00) and Huntington National Bank ($22,240.00). (Def. Exh. G; Transcript of Deposition of Tamara L. Cooper dated June, 2014 ("Def. Tr.") at 28:25-30:6). The couple used most of this money to pay off the Household Finance Loan. (Def. Exh. H). Although Ms. Cooper testified that she believed she was not personally obligated on the two

new notes, the 2007 mortgage to Quicken Loans lists the "Borrowers" as both Ms. Cooper and the Debtor.[2] Thereafter, the Debtor's Florida roofing business failed, and on September 26, 2008, his company was dissolved by the state for failing to file reports as required. (Pl. Exh. 15).

Financial pressures and perhaps the strain of living apart during the Debtor's Florida business venture presumably took a toll on the marriage, and on April 28, 2011 the Debtor and Ms. Cooper began divorce proceedings. (Exh. 6, 43:5-8). On July 25, 2011, the Honorable Gregory Pittman of the Muskegon County Circuit Court (the "State Court"), entered the JOD (Pl. Exh. 1), dissolving the marriage, and awarding the Wilson Beach Property to the Debtor, along with one truck and one car. (*Id.* pp. 2 and 4). By the time of the divorce, the Wilson Beach Property had been foreclosed, and the Debtor was living there during the redemption period. For all intents and purposes, the Wilson Beach Property had no value to the Debtor at the time, other than as a place to stay until the purchaser at the foreclosure sale turned him out.

For Ms. Cooper's share of the equitable distribution in the divorce, the State Court awarded title to the Blue Lake Property, two trucks, one car and the 5th Wheel. (*Id.* p. 3). Pursuant to the JOD, the Debtor also agreed to pay Ms. Cooper $40,000.00 ($2,000.00 per month for twenty months), representing reimbursement for a portion of her pre-marital equity in the Wilson Beach Property. (*Id.* at p. 4). The JOD required the parties to effectuate any title transfers within two weeks of the JOD's entry and also required the Debtor to start making the $2,000.00 monthly payments no later than August, 2011. (*Id.*).

The parties transferred the property as ordered in a timely manner and the Debtor paid the Defendant a total of $6,000.00 on account of his $40,000.00 reimbursement obligation before filing a chapter 7 bankruptcy petition on June 19, 2012.

---

[2] The record does not include either of the 2007 promissory notes or Huntington National Bank's second mortgage.

About one year after her appointment, the Trustee filed an adversary proceeding against Ms. Cooper, alleging that the transfers made by the Debtor pursuant to the JOD were constructively fraudulent under 11 U.S.C. §§ 544(b) and 548, preferential under 11 U.S.C. § 547,[3] and subject to turnover under 11 U.S.C. § 550.

The Trustee filed a motion for summary judgment (DN 10) on January 30, 2014. The court denied it after drawing inferences in favor of the non-moving party. In its ruling, the court inferred that Ms. Cooper may have given value to the Debtor by compromising her marital claims in exchange for the transfers she received, including any contingent claim she had for restoration of property rights pursuant to M.C.L. § 552.19. The court also stated that the Trustee could only proceed under 11 U.S.C. § 548(a)(1)(B)(ii) or M.C.L. § 566.35(1) because she was asserting constructive fraud, not any actual fraud or intent to defraud.

The trial on the fraudulent transfer claims took place in Grand Rapids, Michigan on October 23, 2014. The Trustee proffered one live witness, Mr. Ridlington, who credibly testified that the Blue Lake Property was worth $61,500.00 on the date of the transfer. The court accepts his testimony, despite the fact that the appraisal was not, technically, a retroactive valuation. Mr. Ridlington explained, based on his experience, that the market for vacant land in Muskegon County has been relatively stable since 2011.

Because the Debtor now lives in New Mexico, and Ms. Cooper resides near Cincinnati, Ohio, neither appeared at trial except through their depositions. *See* Fed. R. Civ. P. 32(a)(4). The parties agreed to the admission of the deposition transcripts and, during trial, highlighted those

---

[3] The Trustee abandoned any preference claim during oral argument on her summary judgment motion, leaving only the fraudulent transfer claims for decision at trial.

parts they thought the court should consider. Consequently, the court has reviewed the deposition transcripts, especially the portions highlighted, in addition to the other exhibits.

The court finds that the following property had the following values at the time of the transfers under review:

| Property[4] | Value |
|---|---|
| Blue Lake Property (TC) | $61,500. |
| Wilson Beach Property (D) | $0. |
| 2001 5th Wheel RV (TC) | $2,000. |
| 1997 Ford F250 (TC) | $1,500. |
| 1999 Ford Ranger (TC) | $1,500. |
| 2009 Kia (TC) | $0. |
| 2002 Ford F250 (D) | $10,000. |
| 1999 Ford Taurus (D) | $1,500. |
| Equity Reimbursement (TC) | $6,000.[5] |

From this table and these findings, it appears that Ms. Cooper received the majority of the value of the couple's tangible property distributed pursuant to the JOD.

B. Conclusions of Law

1. General

At least three dichotomies underlie fraudulent transfer litigation in bankruptcy courts. First, a trustee may seek avoidance based on either (1) state fraudulent transfer law,[6] or (2) federal fraudulent transfer law.[7] Second, under both sets of laws, a trustee may avoid either (1)

---

[4] A "TC" in parenthesis indicates that the State Court awarded the item to Ms. Cooper; "D" means the Debtor received the item.

[5] The Debtor transferred $6,000.00 to Ms. Cooper prior to his bankruptcy filing, representing three payments of $2,000.00 each, toward the $40,000.00 debt memorialized in the JOD under the heading "Equity Reimbursement."

[6] In Michigan, the state law is generally the Uniform Fraudulent Transfer Act ("UFTA," M.C.L. § 566.31 *et seq.*). A trustee who relies on the UFTA invokes 11 U.S.C. § 544(b).

[7] 11 U.S.C. § 548.

the transfer of an asset, or (2) the incurrence of an obligation.[8] Third, the transfer of the asset or the incurrence of the obligation must be either (1) actually fraudulent (where a debtor intends to "hinder, delay, or defraud" creditors), or (2) constructively fraudulent (where the effect of the transfer or obligation justifies avoidance).

As the Trustee made clear during the trial, she does not contend that the Debtor made the transfers with actual intent to hinder, delay or defraud creditors. Instead, she relies on a constructive fraud theory under both § 548 and the UFTA.

Although, strictly speaking, the Trustee framed her complaint as taking aim at the transfer of the Blue Lake Property, various automobiles, and the $40,000.00 "Equity Reimbursement" under the JOD, in truth she is challenging the Debtor's agreement to become obligated in the first place under a divorce decree to transfer the vehicles, the Blue Lake Property, and the Equity Reimbursement (including the $6,000.00 he eventually paid in cash). If it were otherwise —*i.e.*, if we assume the Trustee is not seeking to avoid the *obligation* represented by the JOD —the court would find, as a matter of law, that Ms. Cooper gave dollar-for-dollar value for each item of property that the state court ordered the Debtor to *transfer* under the JOD because each dollar in value relieved the Debtor of his obligations under the JOD. Certainly, if the Debtor had not made the transfers, both the state and bankruptcy courts would have no difficulty finding that Ms. Cooper has a claim against the Debtor on account of his failure to transfer the property or make the $40,000.00 reimbursement payments. In fact, Ms. Cooper has filed just such a claim in the bankruptcy court that is allowed under § 502(a), and vulnerable only under § 502(d). Stated differently, if the Debtor had not made the property transfers pursuant to the JOD, Ms. Cooper could have requested that the State Court award her a

---

[8] *See* M.C.L. §§ 566.34 and 566.35 (both referring to transfer of asset or incurrence of obligation); 11 U.S.C. § 548(a)(1) (referring to transfer of asset or incurrence of obligation).

money judgment in lieu of the actual property. Therefore, because it is not a fraud to pay one's debts, the actual *transfer* of the property or reimbursement payments does not offend the fraudulent transfer laws; rather the Trustee is seeking to avoid as constructively fraudulent the Debtor's assumption of the *obligation* memorialized in the JOD.

Indeed, in a dispute between Ms. Cooper and the Debtor, this court would be required to give the JOD (and the obligations it imposed) full faith and credit under 28 U.S.C. § 1738. Therefore, unless the court erases the *obligations* the State Court imposed under the JOD, every penny of value the Debtor gave Ms. Cooper (up to the amount of his debt) satisfied that debt under the State Court's order, and thereby constituted "value" within the meaning of § 548 and the UFTA.

In summary, construing the Trustee's complaint favorably,[9] the court concludes the Trustee is seeking to avoid the Debtor's *obligation* to make the transfers that he in fact made in obedience to the State Court's decree. Viewed in this way, questions of comity between the federal and state courts inevitably arise.

### 2. Avoidance Under § 548(a)

At trial, the Trustee conceded that the Debtor did not act with fraudulent intent in connection with the divorce-related obligations and transfers. Accordingly, she relies on the constructive fraud portions of § 548(a). The statute provides in relevant part as follows:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>     . . .

---

[9] The court is obliged to grant each litigant the relief to which he or she is entitled, "even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *see also* Fed. R. Civ. P. 15(b)(2) (court may conform pleadings to issues tried by consent).

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . .

11 U.S.C. § 548(a)(1).[10]

The Trustee established that the Debtor transferred his property interests in connection with the divorce, and incurred obligations to pay Ms. Cooper, within the two years leading up to the petition date. Similarly, she proved (principally by Ms. Cooper's admission) that the Debtor was insolvent on the date of the divorce (when the transfers and obligations took effect).[11] The only remaining issue is whether the Trustee has proven that the Debtor received less than a reasonably equivalent value in exchange for the transfer or the obligation.[12]

The divorce setting complicates considerably the "reasonably equivalent value" analysis for a number of reasons. First, as Ms. Cooper argued in this case, granting the Trustee any relief comes dangerously close to undermining the decision the State Court reached in equitably dividing the marital and non-marital property between the spouses. The federal courts have long recognized that many family law decisions are inherently a matter for the state courts. *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) (domestic relations exception divests federal courts of power to issue divorce, alimony and child custody decrees).

---

[10] The Trustee offered no satisfactory proof of facts to support a finding under § 548(a)(1)(B)(ii)(II), (III) or (IV), and the court so finds.

[11] *Estes v. Titus*, 751 N.W.2d 493, 497 (Mich. 2008) ("The [divorce] decree, upon becoming final, shall have the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party).

[12] In order to avoid the transfers or the obligations under review, the Trustee must, as part of her *prima facie* case, prove by a preponderance of the evidence that the Debtor did not receive reasonably equivalent value. *Notinger v. Migliaccio (In re Financial Resources Mortg., Inc.)*, 454 B.R. 6, 21 (Bankr. D.N.H. 2011) ("receipt of less than reasonably equivalent value is a *prima facie* element of a constructive fraud claim and not an affirmative defense"); *Springer v. Okaw Truss, Inc. (In re Top Flight Stairs & Rails, Ltd.)*, 398 B.R. 321 (Bankr. N.D. Ill. 2008) (citing *Trunnell v. Brookshire*, No. 06–6229 AER, 2007 WL 963337, at * 2 n. 9 (Bankr. D. Or. Mar. 28, 2007)).

Although the property settlement decisions of family courts do not have issue preclusive effect in a later fraudulent conveyance dispute[13] and are not within the "domestic relations exception" to federal jurisdiction as explained in *Ankenbrandt*, a federal court deciding whether to avoid transfers that a family court ordered in an earlier divorce action should, as a matter of comity, pause before undermining the decisions of its state court colleagues.

Similarly, a federal court that is asked to unwind divorce-related property settlements should hesitate for the same reasons underlying the United States Supreme Court's conclusion that the consideration received at a "noncollusive, regularly conducted" real estate foreclosure sale constitutes reasonably equivalent value under § 548(a)(2)(A) as a matter of law. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994);[14] *see also Batlin v. Bledsoe (In re Bledsoe)*, 569 F.3d 1106 (9th Cir. 2009) (extending *BFP* rationale to divorce-related transfers challenged as constructively fraudulent); *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205 (5th Cir. 2003) (same); *but see Fordu*, 201 F.3d at 709 n.19 (acknowledging merit of extending the *BFP* holding to domestic relations area absent collusion, but declining to do so). In the present case, as the Trustee admits, the record contains no evidence of fraud, and the divorce decree itself is *prima facie* evidence of the regularity of the divorce proceedings.[15]

Because the court is not free to hold as a matter of law that the consideration Ms. Cooper received from the Debtor under the divorce decree constitutes reasonably equivalent value, it must consider whether the Trustee has established by a preponderance of the evidence the Debtor's non-receipt of such value.

---

[13] *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693 (6th Cir. 1999); *Estes, supra at n.11*.

[14] The Supreme Court, quoting Justice Frankfurter, observed that "[f]ederal statutes impinging upon important state interests 'cannot ... be construed without regard to the implications of our dual system of government ...'." *BFP*, 511 U.S. at 544.

[15] Under M.C.L. § 600.2104, a "copy of any order, judgment or decree, of any court of record in this state . . . shall be *prima facie* evidence of the jurisdiction of said court over the parties to such proceedings and of all facts recited therein, and of the regularity of all proceedings prior to, and including the making of such order, judgment or decree."

Proving the absence of reasonably equivalent value in a divorce setting is particularly problematic for a plaintiff such as the Trustee, as Justice Kelly predicted in her concurring opinion in *Estes*:

> Clearly, many intangible or indirect benefits are involved in the property distributions in these cases. It is usually very difficult to show that the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred.

*Estes*, 751 N.W.2d at 505 n. 1.  Throughout this proceeding, in its Pretrial Order, in ruling on the summary judgment motion, and again during trial, the court emphasized the importance of understanding the intangible and other benefits the Debtor received under the divorce decree, including whether Ms. Cooper had claims against the Debtor at the time of their divorce. This is because § 548, like the UFTA,[16] defines "value" to mean the "satisfaction . . . of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2)(A). Stated differently, it is generally not a fraud on one creditor to pay another.

Michigan's divorce laws specifically authorize a divorce court to consider the reasonable allocation of value among the spouses, and in so doing expressly recognize that divorcing spouses may have claims for restitution of separate property they may have contributed to the martial estate:

> Upon . . . a divorce from the bonds of matrimony . . .  the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money.

M.C.L. § 552.19; *see also id.* § 552.401. Indeed, as the Honorable James D. Gregg recently recognized, the legal relationship of the spouses to each other and to marital property changes

---

[16] M.C.L. § 566.33(1).

significantly upon the filing of a divorce action. *Moyer v. Slotman (In re Slotman)*, 2013 WL 7823003, Slip Op., Adv. No. 12–80232 (Bankr. W.D. Mich. Dec. 5, 2013). Although a spouse may not have had a claim to marital or separate property before filing for divorce, Michigan law gives each spouse a statutory (and perhaps equitable) claim, albeit unliquidated, against the property of the other, "to be paid by either party in money." M.C.L. § 552.19.

This right to payment, which arises upon the commencement of the divorce proceeding, certainly falls within the broad definition of "claim" or "debt" within the meaning of § 548 or the UFTA,[17] as the court observed in denying the Trustee's summary judgment motion. In fact, the ex-spouses and the State Court recognized these inter-spousal claims and expressly released them in the JOD. *See* Pl. Exh. 1 p. 6 ("This Judgment is intended to be a settlement of any and all *claims* between the parties of every kind and nature….") (emphasis added).

Here, the Debtor satisfied his obligation to restore the Wilson Beach Property's equity to Ms. Cooper (who contributed that value to the marriage) by agreeing to transfer the property listed in the JOD. During her deposition, Ms. Cooper explained that she contributed the Wilson Beach Property to the marriage, first by quitclaiming her separate interest in the property to the Debtor and herself, and then by agreeing to use it as collateral for a loan that liberated about $78,000.00 or $80,000.00 in "equity" that the Debtor used to start his business. *See* Def. Tr. at 39:13 - 40:24; 49:25 - 50:6.  Moreover, the value of the Wilson Beach Property was likely higher than the amount of the $198,000.00 Household Finance Loan because, as Ms. Cooper and the Trustee discussed during the deposition, lenders usually require an equity cushion between the loan amount and the value of the collateral. *See* Def. Tr. at 32:4-18 (discussing loan to value ratio).

---

[17] *See* M.C.L. § 566.31(c) (defining "claim") and (d) ("debt"); *see also* 11 U.S.C. § 101(5) ("claim"); *id.* § 101(12) ("debt").

The court notes that, at the time of the divorce, the Wilson Beach Property had been foreclosed, and the parties (including the Trustee) assigned no value to it. From this, the court infers that Ms. Cooper contributed at least $78,000.00 and perhaps as much as $100,000.00 to the marriage[18] by sacrificing her separate real estate to the Debtor's debts, business, and ultimately, the foreclosure.

Throughout the proceeding, the Trustee seems to have believed that there was only $40,000.00 in equity in the Wilson Beach Property, evidently based upon the $40,000.00 payment obligation reflected in the divorce decree at page 4 under the heading "Equity Reimbursement." *See, e.g.,* Debtor Tr. at 43:22-23. Ms. Cooper explained, however, that the equity was much closer to $80,000.00, and that the $40,000.00 reimbursement obligation was a payment to close the gap between the value of the Blue Lake Property and the $80,000.00 she contributed to the marriage by supporting the Debtor in his failed ventures:

> Q:      Why did you ask for the Blue Lake Township property, in addition to the [$40,000.00] cash?
>
> A:      Because I was basically trying to--I was trying to put back what I had brought into the marriage. I lost the Wilson Beach home. I had lost the equity that was in that home. And so I was just trying to get back to what I felt I had started in the marriage with.

Def. Tr. at 50:18-24. This, in a nutshell, is the claim that arose in favor of Ms. Cooper upon the commencement of the divorce proceeding, and therefore the debt the Debtor satisfied, in part, by transferring much of the marital property and the Blue Lake Property to Ms. Cooper, and agreeing (further) to the $40,000.00 reimbursement obligation. The Debtor's testimony similarly confirms that the value of the equity (above the pre-existing mortgage in the original amount of

---

[18] Inferring that the Defendant's lenders observed a 90% loan to value ratio, and assuming a loan in the amount of $198,000.00, it is as plausible as not that the Wilson Beach Property was worth $220,000.00 as the Defendant's testimony suggested at one point. *See* Def. Tr. 39:19-25 (value of the property might have been as high as $220,000.00).

$120,000.00) that Ms. Cooper contributed to the marriage exceeded the $40,000.00 reimbursement obligation. *See* Transcript of Deposition of Shawn C. Allen dated May 2014 ("Debtor Tr.") at 43:22 - 44:5 ("I believe it was more than that [$40,000.00] because that's why I agreed to give her the [Blue Lake] property too.").

Given the Trustee's concession that no fraud or collusion infected the divorce decree, and the State Court's imprimatur, it is reasonable to infer that the JOD represented a fair division of the marital and pre-marital (separate) property, in light of the competing claims of the spouses under Michigan's divorce statutes. The court finds that, because the transfers of the JOD plus the $40,000.00 "Equity Reimbursement" obligation satisfied Ms. Cooper's claims against the Debtor under M.C.L. §§ 552.19 and 552.401, she gave reasonably equivalent value.

The court finds unpersuasive the Trustee's chart (DN 39) which purports to show the exchange that occurred during the divorce. First, the chart omits Ms. Cooper's claim for restoration of the value of the Wilson Beach Property —a claim in the amount of at least $80,000.00 and perhaps as much as $100,000.00. Second, including the Debtor's promise to pay $40,000.00 over time among the value that Ms. Cooper received is unreasonable because a promise to pay $40,000.00 over time is generally not worth $40,000.00 (given the time value of money). Moreover, such a promise from an already insolvent obligor is worth even less than the face amount, as the Debtor's eventual bankruptcy filing unfortunately demonstrates.

The Trustee's chart should reflect the fact that the Debtor received not $11,500.00, but at least $91,500.00, to take into account the satisfaction of Ms. Cooper's claims to restoration of the value of Wilson Beach Property. Even without fully deducting the practically worthless $40,000.00 promise from the second column in the chart, the court has no difficulty finding that

$91,500.00 is reasonably equivalent to the $106,500.00 that the Trustee contends Ms. Cooper received under the divorce decree. *See Suhar v. Bruno (In re Neal)*, 541 Fed. Appx. 609 (6th Cir. 2013) ("a debtor is not required to collect a "dollar-for-dollar equivalent" to meet this requirement") (unpublished).

During the trial, and to some extent during Ms. Cooper's deposition, the Trustee argued that if the court is going to take into account Ms. Cooper's claim for restoration of the value of the Wilson Beach Property, the court must take into account other advantages that the Debtor bestowed upon Ms. Cooper or the marital estate. Certainly, if the Debtor had contributed his separate property to the marriage, he, too, would have a claim under the same statute that the State Court addressed and resolved in the JOD. There is no evidence, however, to support any such benefit that he might have bestowed, and the Trustee has the burden of proof on the issue.

As for the argument that Ms. Cooper received a benefit because the Debtor supposedly re-financed the loan on the Wilson Beach Property in his own name in 2007, thereby relieving Ms. Cooper of this obligation, the court is not persuaded. First, the Quicken mortgage documents admitted at trial, which lists the "Borrowers" as both Ms. Cooper and the Debtor, do not support this assertion. Nor, for that matter, does Ms. Cooper's somewhat confused and confusing testimony on the point undermine the fact that she quit-claimed the Wilson Beach Property to the Debtor, that the property remained liable under the mortgage after the refinancing, and that she in fact lost all of its value when the lender foreclosed in July, 2011.

Throughout this proceeding, the Trustee has placed considerable weight on the Sixth Circuit's opinion in *Neal*, and this reliance deserves special mention. As an unpublished opinion, *Neal* is not binding on other Sixth Circuit panels, and therefore does not resolve any issue in our

Circuit. *See* 6 Cir. R. 32.1(b) (implying that unpublished opinions are not binding on later Sixth Circuit panels by specifying that "[p]ublished panel opinions are binding on later panels."). Nor is the decision particularly supportive of the Trustee's position in any event.

Most generally, the *Neal* court's decision was motivated in part by its concern about the "obviously deceptive practice of permitting divorcing spouses to unjustifiably depart from the practice of equitable distribution just to defraud one of the spouse's creditors." *Neal,* 541 Fed. Appx. at 613. Given the Trustee's concession that there is no evidence of collusion, the *Neal* panel's concern is not at issue in a case involving allegations of constructive (not actual) fraud. More specifically, although the Trustee seems to argue that Ms. Cooper did not have an enforceable contract or tort claim against the Debtor on account of the Wilson Beach Property, the *Neal* panel instructs courts to look to marital law, not ordinary commercial law, to determine the interests and obligations of ex-spouses in bankruptcy court. *See Neal*, 541 Fed. Appx. at 613 (*citing Fordu*, 201 F.3d at 700–02). In other words, *Neal* itself requires the court to consider the effect of Michigan's marital laws, such as M.C.L. § 552.19, on the fraudulent transfer analysis, including the satisfaction of antecedent debt. The exercise is not as simple or facile as summing up property values in a spreadsheet or table.

For the foregoing reasons, the court finds that Ms. Cooper gave reasonably equivalent value in exchange for the Debtor's obligations under the JOD, and therefore the transfers made pursuant to the JOD are not avoidable as constructively fraudulent transfers under § 548(a).

### 3. Avoidance Under § 544(b) & UFTA

The Trustee's arguments under the UFTA fail for the same reasons just given with respect to reasonably equivalent value, and also for a lack of proof on a dispositive element of a *prima facie* case under § 544(b).

When a trustee seeks to avoid a fraudulent conveyance using state law, she is asserting her authority under § 544(b), which means that she has to prove, as part of her case, the existence of an actual creditor holding an unsecured claim that is allowable under § 502 who could have avoided the transfers. "[T]he section 544 'strong-arm' provision of the Code allows the trustee to 'step into the shoes' of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of all creditors." *Fordu*, 201 F.3d at 698 n.3. In this case, the Trustee did not identify such a creditor or show that one exists, either in her proposed findings of fact and conclusions of law, or during the presentation of her proofs.[19]

Given the Trustee's failure to establish the existence of a "golden" or "triggering creditor" as required under § 544(b) to assert a claim under the UFTA, the court finds against the Trustee on the state law counts. *Solomon v. Fellmy (In re Felsner)*, 289 Fed. Appx. 879, 883 (6th Cir. 2008); *Lyon v. Forbes (In re Forbes)*, 372 B.R. 321, 335 (6th Cir. BAP 2007) ("the trustee must first establish that at the time of the transaction there was, in fact, a creditor in existence who was holding an unsecured claim that is allowable under 11 U.S.C. § 502").

### 4. Recovery Under § 550

Because the Trustee is not entitled to a declaration avoiding the transfers or the obligations related to the JOD, she is not entitled to recovery under 11 U.S.C. § 550.

---

[19] As the court observed in ruling on the Trustee's motion for summary judgment, the Trustee appears to be relying on M.C.L. § 566.35, which requires her to prove the existence of a creditor at the time of the divorce judgment. The fact that it might have been easy to do so does not excuse this shortcoming in the Trustee's proofs.

IV. CONCLUSION AND ORDER

The crux of the court's decision is this: Ms. Cooper had a right to payment under M.C.L. § 552.19 at the commencement of the divorce case against the Debtor for the value of the Wilson Beach Property that he exhausted in his failed roofing business in Florida, even if she would not have or could not have sued the Debtor outside the divorce court. The definition of claim that applies in both state and federal fraudulent conveyance litigation is broad enough to include the right to payment the State Court recognized and honored by entering the JOD. When the Debtor satisfied Ms. Cooper's claim to the value of the Wilson Beach Property by transferring the Blue Lake Property, the various automobiles, and the 5th Wheel recreational vehicle, and by agreeing to make the additional $40,000.00 payment, he received reasonably equivalent value. For this reason, the court will direct the Clerk to enter judgment for Ms. Cooper.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall enter judgment of no cause of action.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion After Trial pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Robert A. Stariha, Esq., and Marcia R. Meoli, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 13, 2014**



Scott W. Dales
United States Bankruptcy Judge